FILED ___ LODGED
___ RECEIVED ___ COPY

DEC 1 7 2001

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Michael Kielsky,
Petitioner

-vs-

Hon. Michael Morales, et al.,
Respondent(s)

CV-00-1343-PHX-EHC (JI)

REPORT & RECOMMENDATION
re Petition for Writ of Habeas Corpus
Pursuant to 28 U.S.C. § 2254

## I. NATURE OF THE CASE

Petitioner, having been given a suspended sentence and probation (both now completed), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

## II. MATTER UNDER CONSIDERATION

Petitioner's Amended Petition for Writ of Habeas Corpus, filed August 29, 2000 (#3) is now ready for consideration.

Accordingly, this Court makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 1.17(d)(3), Local Rules of Practice.

## III. RELEVANT FACTUAL BACKGROUND

Petitioner, seeing three people outside an apartment adjacent to his own, one of

them with a knife, produced a handgun, pointed it at them, and ordered them to drop the knife, and to drop to their knees. They complied, and Petitioner began yelling for someone to call 911. Two of the three turned out to be teenagers residing in the complex, and the third was an overnight guest. The police were called and Petitioner was arrested on charges of aggravated assault and kidnapping. (Motion to Dismiss, #9, Exhibit A, Item 31, Appellant's Memorandum, at 1-2 (exhibits to the Motion to Dismiss are referenced hereinafter as "Exhibit ___"); Exhibit A, Item 36, Appellee's Memorandum at 1-4.)

## IV. RELEVANT PROCEDURAL BACKGROUND

### 1. Original Sentence

Following a trial to the court, and pursuant to a Judgment dated April 22, 1998, Petitioner was convicted on three counts of misdemeanor unlawful imprisonment by the Chandler City Court, Chandler, Arizona. He was sentenced to three concurrent terms of one year's probation, and three concurrent suspended jail sentences of 21 days.[1] (Exhibit A, Item 24, Judgment and Sentence.)

### 2. Appeal to Arizona Superior Court

On April 30, 1998, Petitioner filed with the Chandler City Court a Notice of Appeal. (*Id.* at Item 25.) By a minute order dated January 20, 1999, and filed January 25, 1999, the Arizona Superior Court, Maricopa County, denied the appeal, affirmed the convictions, and remanded to the trial court. (Exhibit B at Item 39.)

### 3. Appeal to Arizona Court of Appeals

On March 15, 1999, Petitioner filed an appeal of the Arizona Superior Court's decision to the Arizona Court of Appeals, having previously had his motion for delayed appeal granted. (Exhibit A at Item 42.) By Order entered April 14, 1999, the Arizona

---

[1] Although the judgments do not specify that the probation terms are concurrent, the Arizona Courts have held that consecutive terms of probation are unlawful. See *State v. Jones*, 124 Ariz. 24, 601 P.2d 1060 (1979).

1  Court of Appeals dismissed the appeal, citing a lack of jurisdiction.[2] (Exhibit C.)

### 4. Petition for Special Action

On May 14, 1999, Petitioner filed a Petition for Special Action with the Arizona Supreme Court, seeking review of the decision of the Arizona Court of Appeals. (Opposition to Motion to Dismiss, #12, Exhibit 4.) On June 18, 1999, the Arizona Supreme Court declined to accept jurisdiction over that petition. (Original Petition, #1, Exhibits, Notice of Decision of Arizona Supreme Court.)

### 5. Re-Sentencing By Trial Court

On August 11, 1999, over the objection of Petitioner (and for reasons not clear to this Court), the municipal judge re-sentenced Petitioner to a new set of three concurrent terms of one year's probation, and three consecutive suspended sentences of 21 days.[3] (Exhibit A, Item 45, Motion to Vacate Sentencing/Motion to Continue Sentencing; Exhibits to First Amended Complaint, #3.)

### 6. Release From Custody

By an Order dated October 31, 2000, and inexplicably entered on September 27, 2000, Petitioner was released from probation. That Order purported to make the release retroactively effective to August 11, 2000. (Response, #12, Exhibit 1.)

### 6. Current Petition

---

[2] Petitioner argues that the Arizona Court of Appeals wrongly concluded that it did not have jurisdiction, because Ariz.Rev.Stat. § 22-375 gave it jurisdiction over appeals claiming that a statute was invalid, and Petitioner was arguing that the Victims' Rights Statutes were invalid. *See* Amended Reply, #28 at 4-5 ; #12, Exhibit 2, Appellant's Opening Brief.) However, this statute has been interpreted as limiting jurisdiction to claims of facial invalidity. *State v. Martin*, 174 Ariz. 118, 847 P.2d 619 (App. 1992).

[3] This second sentencing did not include the hand written notation of the first which specified that the suspended sentences were concurrent. Under Ariz. Rev. Stat. § 13-708, contemporaneous sentences are presumed to be consecutive.

The present Petition for Writ of Habeas Corpus was originally filed on July 14, 2000 (#1). On August 2, 2000, the Court found a lack of exhaustion, and entered an order dismissing the original petition with leave to amend within 30 days. (#2) On August 29, 2000, Petitioner filed his First Amended Petition (#3). The amended petition re-asserts the first three grounds for relief from the original petition, adding additional constitutional references on the second and third grounds and reformulating his recitation of his claims. Thus, Petitioner asserts the following three grounds for relief:

(1) violation of due process by conviction without proof of an essential element of the crime (namely "restraint" of the victims);

(2) violation of due process as a result of denial of a right cross examine witness/victims with statements taken prior to the filing of charges;

(3) violation of due process as a result of denial of meaningful appeal and overly broad interpretation of statutes. (#3)

Respondents filed a Motion to Dismiss (#9) asserting alternatively that the Petition was untimely, or that the Court had no jurisdiction because Petitioner was no longer in custody. Following a Report & Recommendation by the undersigned (#14), the Motion to Dismiss was denied (#19).

On October 16, 2001 Respondents filed a Supplemental Answer (#21) addressing the merits of Petitioner's Petition. That Supplemental Answer asserts that Petitioner's claims are procedurally defaulted, and therefore barred from federal habeas review.

## V. APPLICATION OF LAW TO FACTS

### A. FAILURE TO FAIRLY PRESENT CLAIMS

Respondents' Supplemental Answer (#21) argues that Petitioner has failed to "fairly present" his federal claims to the state courts, either: (1) because he failed to present his claims to the Arizona Court of Appeals in a procedurally proper manner, or (2) because he raised them only as state law claims. Thus, this case treads familiar ground of

exhaustion and procedural default, but does so with the added twist of applying those principles to a municipal court prosecution.

### 1. Presentation to Arizona Court of Appeals Not Required

Generally, a federal court has authority to review a federal constitutional claim presented by a state prisoner only if "available" state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)(per curiam); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991). The exhaustion doctrine, first developed in case law and codified at 28 U.S.C. § 2254, now states:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available state corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> * * * *
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Under this standard, Petitioner must have exhausted his "available" remedies. Thus, in applying this exhaustion standard, it is critical to determine what remedies are "available."

Ordinarily, an Arizona state petitioner can exhaust his claims by properly pursuing them through either the state's direct appeal process or through appropriate post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant

to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), cert. denied, 489 U.S. 1059 (1989).

Moreover, for Arizona state prisoners convicted in the Arizona Superior Court, claims presented in habeas petitions are ordinarily considered exhausted if they have been ruled upon by the Arizona Court of Appeals (appeal to the Arizona Supreme Court is not required). *See Swoopes*, 196 F.3d at 1010.

However, Arizona provides different appellate review procedures for convictions in municipal courts, as opposed to superior court convictions. In Arizona, a person convicted in a municipal court can appeal that conviction to the Arizona Superior Court, rather than the Arizona Court of Appeals. Ariz. Rev. St. § 22-371. The right to further appeal from the decision of the Superior Court is limited. Ariz. Rev. Stat. § 22-375 provides:

> A. An appeal may be taken by the defendant, this state or any of its political subdivisions from a final judgment of the superior court in an action appealed from a justice of the peace or police court, if the action involves the validity of a tax, impost, assessment, toll, municipal fine or statute.
> B. Except as provided in this section, there shall be no appeal from the judgment of the superior court given in an action appealed from a justice of the peace or a police court.

Thus, under the provisions of Ariz.Rev.Stat. § 22-375, no appeal beyond the Superior Court is available.

Similarly, Article 6, Section 5 of the Arizona Constitution limits the non-discretionary jurisdiction of the Arizona Supreme Court over appeals from non-record courts like municipal courts.

> The Supreme Court shall have:
> * * *
> 3. Appellate jurisdiction in all actions and proceedings except

> civil and criminal actions originating in courts not of record, unless the action involves the validity of a tax, impost, assessment, toll, statute or municipal ordinance.
> 4. Power to issue injunctions and writs of mandamus, review, prohibition, habeas corpus, certiorari, and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction.

While these provisions limit the non-discretionary jurisdiction of the Arizona courts, they do not preclude those courts from exercising discretionary jurisdiction in the nature of a special action. *See State v. Jones ex rel. County of Maricopa*, 198 Ariz. 18, 6 P.3d 323 (Ariz.App. 2000) (granting review in the Arizona Court of Appeals in a special action appealing a justice court conviction); *State ex rel. McDougall v. Strohson*, 190 Ariz. 120, 945 P.2d 1251 (1997) (granting review in the Arizona Supreme Court in a special action appealing from a municipal court decision). Indeed, Arizona has adopted the "petition for special action" to replace a variety of common law proceedings, including *writs of certiorari* (other than those attacking the jurisdiction of the inferior court). 17B Ariz. Rev. Stat., Special Actions, Rules of Proc., Rule 1; Ariz. Rev. Stat. § 12-2001 (*writs of certiorari* for jurisdictional attacks). Accordingly, an Arizona petition for special action that attacks a judgment (even on grounds other than lack of jurisdiction) may be properly recognized as the equivalent of a petition for a *writ of certiorari*.

Respondents argue that the finding of this Court that the Petitioner's ineffective direct appeal to the Arizona Court of Appeals delayed commencement of the statute of limitations requires a finding that proper presentation to that court was necessary to exhaust Petitioner's state court remedies. The timeliness and exhaustion rules do not, however, rely on the same criteria.

The timeliness bar simply asks when a petitioner has completed all "direct review." Petitioner was entitled to "direct review" in the Arizona Court of Appeals, albeit on the limited issues specified in Ariz.Rev.Stat. §22-375. Although Petitioner's claims did not meet the limitations on the scope of that direct review, the Arizona Court of Appeals was required, nonetheless, to entertain the appeal and resolve any issues within the authorized

Report & Recommendation - CV-00-1343-PHX-EHC (JI)                                                           Page 7 of 20

1  scope.

2  The exhaustion bar, on the other hand, asks not whether the review was "direct,"
3  but whether it was "available." Under the limitations of Ariz.Rev.Stat. § 22-375, review
4  of Petitioner's claims by the Arizona Court of Appeals, based on their finding of a lack
5  of jurisdiction, was not "available" to Petitioner.

6  This dichotomy between review which is "direct" for purposes of applying the
7  statute of limitations, and review that is "available" for purposes of applying the
8  exhaustion requirement, is not novel. Indeed, Arizona has held that even in Superior
9  Court convictions, an appeal to the Arizona Supreme Court from the Arizona Court of
10 Appeals, which is undoubtedly part of "direct review," is not "available" for purposes of
11 applying the exhaustion requirement. *See Swoopes v. Sublett*, 196 F.3d 1008 (1999).

12 Accordingly, the undersigned concludes that Petitioner need not have "fairly
13 presented" his federal claims to the Arizona Court of Appeals to have exhausted his
14 "available" state remedies. Rather, in light of *Swoopes v. Sublett*, and the limitations of
15 Ariz.Rev.Stat. § 22-375, the only state review "available" to Petitioner with respect to the
16 his claims based upon the proceedings at trial was review by the Arizona Superior Court.

17

18 **2. Petitioner's Claims Were Not Fairly Presented**

19 Given the "available" state forums, this Court must ascertain whether Petitioner's
20 claims were properly presented.

21 In presenting his claims to the state court, the petitioner must provide the state
22 courts with a "fair opportunity" to apply controlling legal principles to the facts bearing
23 upon his constitutional claim. 28 U.S.C. § 2254; *Picard v. Connor*, 404 U.S. 270, 276-277
24 (1971). Although a federal habeas petitioner may reformulate somewhat the claims made
25 in state court, *Tamapua v. Shimoda*, 796 F.2d 261, 262 (9th Cir. 1986), rev'd in part on
26 other grounds by *Duncan v. Henry*, 513 U.S. 364 1995), the substance of the federal claim
27 must have been "fairly presented" in state court. *Anderson v. Harless*, 459 U.S. 4, 6
28

(1982)(per curiam); *Picard v. Connor*, 404 U.S. 270, 278 (1971); *Tamapua*, 796 F.2d at 262. While the petitioner need not recite "book and verse on the federal constitution", *Picard*, 404 U.S. at 277-78 (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson*, 459 U.S. at 6.

> We hold that a petitioner for habeas corpus relief under 28 U.S.C. § 2254 exhausts available state remedies only if he characterized the claims he raised in state proceedings specifically as federal claims. In short, the petitioner must have either referenced specific provisions of the federal constitution or statutes or cited to federal case law.

*Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *amended* 247 F.3d 904 (9th Cir. 2001).

Here, Petitioner's claims were not fairly presented to the Arizona Superior Court.

### a. Proof of Essential Elements Raised Only as State Law Claim

For his first ground for relief, Petitioner argues that his federal rights were violated by his being convicted without proof of an essential element of the crime. Petitioner argues that his conviction for unlawful imprisonment required proof of "restraint" of the victims, i.e. that he "moved" or "confined" them, and no such proof was introduced. (#3 at 5.) Petitioner presented the factual basis of this claim to the Arizona Superior Court. (Exhibit A, Item 31 at 3-11.) However, Petitioner did not assert any federal rights or claims, nor did he cite any federal authority, in connection with this claim.[4] (*Id.*)

Under the standard of *Lyons*, the undersigned must conclude that this claim was not "fairly presented," and was not exhausted.

### b. Cross-Examination Raised Only as State Law Claim

Petitioner did present a claim to the Arizona Superior Court that the trial court had improperly restricted Petitioner's cross-examination of the witness/victims. (Exhibit

---

[4] The prosecution did reference *Jackson v. Virginia*, 443 U.S. 307 (1979) in its responsive brief, however, it did so only in connection with references to a host of state authorities establishing the Arizona standard for evaluating insufficient evidence claims. (Exhibit A, Item 36, Appellee's Memorandum at 4.)

A, Item 31, Appellant's Memorandum at 12-14.) Again, however, Petitioner did not assert any federal constitutional rights, nor cite any federal authority, in making that claim.[5] (*Id.*)

Thus, it cannot be said that Petitioner gave the state courts a "fair opportunity" to resolve his federal claim on this evidentiary issue, and thus Petitioner has failed to exhaust this claim.

### c. Meaningful Appeal Raised Only as a State Law Claim

Petitioner's final ground for relief is based in large part upon the Arizona Court of Appeals' refusal to accept jurisdiction over Petitioner's appeal. (#3 at 7.) Thus, Petitioner argues that "the Appellate Court's refusal to accept appellate jurisdiction denied Petitioner meaningful appellate review, equal protection of the law, access to the courts, and due process." (*Id.*)

The undersigned assumes, for purposes of this Report & Recommendation, that this claim could be properly exhausted by its presentation in special action to the Arizona Supreme Court. *See, O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (exhaustion requires presentation even though review was discretionary). And, in fact, Petitioner did challenge the Arizona Court of Appeals' rejection of jurisdiction in his Petition for Special Action. (#12, at Exhibit 4.) However, the bulk of Petitioner's Petition for Special Action was committed to attacking the decisions of the superior court judge, Hon. David R. Cole, and the municipal court magistrate, Hon. Michael Morales, on the basis that their rejection of Petitioner's claims on the merits were improper. Only one paragraph of the petition substantively addressed the actions of the judges of the Arizona Court of Appeals, Hon. Philip E. Toci and Hon. Anthony Mackey:

> Respondent Judges Mackey and Toci interpret §22-375 in a fashion

---

[5] While the prosecution did reference the "Confrontation Clause" in responding to the appeal (Exhibit A, Item 36, Appellee's Memorandum at 9-10), the Arizona Superior Court did not resolve the matter on a federal law basis, but concluded that Petitioner had waived any objection by failing to make an offer of proof at trial as to the information to be elicited on the prohibited cross-examination.

which denies Petitioner equal protection of the law and arbitrarily deny him access to the courts, in violation of the Arizona Constitution Art. 2 § 4 (due process) § 5 (right of petition) § 13 (equal privileges) and § 24 (right to appeal in all cases).

This charge is clearly based upon state constitutional rights, and not any federal rights. Thus, Petitioner has failed to raise the instant claim as a federal claim, and has failed to exhaust his state remedies.

### B. CLAIMS ARE PROCEDURALLY DEFAULTED

Petitioner has failed to present his claims to the state courts. If there are no longer state remedies available, then Petitioner will have "procedurally defaulted" those claims and must be precluded from raising them in this federal habeas proceeding.

As to Petitioner's first and second grounds for relief, arising out of the actions of the trial court, Arizona makes no provision for successive direct appeals. *See generally,* Ariz. Sup. Ct. R.A.P. - Crim. 4 (notices of appeal must be filed within ten days of entry of judgment and sentence). Moroever, Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." That deadline is long past for Petitioner. While Rule 32.4(a) does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h), Petitioner has not asserted that any of these exceptions are applicable to him. Accordingly, Petitioner has no state remedies on these claims available.

Similarly, Petitioner's third ground for relief, based upon the actions of the Arizona Court of Appeals, has already been presented under a state law theory in his Special Action to the Arizona Supreme Court. The Arizona Supreme Court rejected the request for review.[6] Petitioner is now barred by the applicable one year statute of

---

[6] The Arizona Supreme Court is the court of last resort in Arizona, and thus no direct appeal from the Arizona Supreme Court is possible. *See* Ariz. Const. Art. VI, § 1; *Southwestern Paint & Varnish Co. v. Arizona Dept.*

limitations, Ariz.Rev.Stat. § 12-821, from again seeking review.[7] Accordingly, Petitioner has no state remedies on this claim available.

Thus, whatever state remedies may have been available to Petitioner originally have been lost by Petitioner's failure to pursue them originally, or in a timely subsequent proceeding.

> If state remedies are not available because the petitioner failed to comply with state procedures and thereby prevented the highest state court from reaching the merits of his claim, then a federal court may refuse to reach the merits of that claim as a matter of comity.

*Buffalo v. Sunn*, 854 F.2d 1158, 1163 (9th Cir. 1988). This failure to comply with reasonable state procedures is usually characterized as "procedural default." When a petitioner has "procedurally defaulted", his claim is barred unless the unavailability of state remedies is in no way the fault of the petitioner or his or her counsel. *Reed v. Ross*, 468 U.S. 1, 11 (1984); *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977); see also *Teague v. Lane*, 489 U.S. 288, 298 (1989); *Tacho v. Martinez*, 862 F.2d 1376, 1380 (9th Cir. 1988).

### 1. No "Cause and Prejudice" Asserted

Respondents asserted in their Supplemental Answer that Petitioner has procedurally defaulted his claims. (Supplemental Answer, #21 at 3-4.) Accordingly, on October 17, 2001, the Court ordered Petitioner to file a reply to address the claim of procedural default, and to assert any claims of "cause and prejudice" or "actual innocence" which might excuse the default. (#23) Thereafter, Petitioner filed his Amended Reply (#28). While that Amended Reply asserts that Petitioner has shown "actual innocence," it makes no claim of cause and prejudice. The undersigned finds none *sua sponte*.

### 2. Petitioner Has Not Shown "Actual Innocence"

---

of *Environmental Quality*, 194 Ariz. 22, 25, 976 P.2d 872, 875 (1999).

[7] While principles of *res judicata* might ordinarily preclude Petitioner from again seeking relief by way of Arizona special action on this claim, see generally, *Dowell v. Ross*, 134 Ariz. 422, 657 P.2d 410 (1982) (applying *res judicata* to judgement rendered upon remand from special action); *Stuart v. Winslow Elementary School Dist. No. 1, Navajo County*, 100 Ariz. 375, 414 P.2d 976 (1966) (recognizing *res judicata* effect of Superior Court judgment on writ of *certiorari* from school board decision), preclusion arguably would not apply because the decision was not on the merits. See generally *Phillips v. Arizona Bd. of Regents*, 123 Ariz. 596, 601 P.2d 596 (1979).

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances. *Hughes*, 800 F.2d at 909. Failure to establish cause for a procedural default may be excused under exceptional circumstances. For instance:

> ... in an extraordinary case, where a constitutional violation has probably resulted in the conviction of <u>**one who is actually innocent**</u>, a federal habeas court may grant the writ even in the absence of showing cause for the procedural default.

*Murray v. Carrier*, 477 U.S. at 496, emphasis added.

Petitioner asserts in his Amended Reply that he has shown his "actual innocence" by showing: (1) that the "restraint" element was not proven (#28 at 6-9); (2) that the "overbreadth" analysis under *New York v. Ferber*, 458 U.S. 747 (1982) renders the statute invalid (#28 at 9-10); (3) the trial court excluded exculpatory evidence that showed Petitioner's "actual innocence" (#28 at 10-14); and (4) the state courts wrongly overlooked Petitioner's claim of legal authority to restrain the victims (#28 at 14-17).

The standard for "actual innocence" is the same as that applied in evaluating whether to allow successive habeas petitions. *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). That standard was articulated in *Kuhlmann v. Wilson*, 477 U.S. 436 (1986); as follows:

> [T]he prisoner must "show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt."

*Id.*, 477 U.S., at 455, n. 17, 106 S.Ct., at 2673 n. 17, quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142, 160 (1970).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A showing that a reasonable doubt exists in the light of the new evidence is not sufficient. Rather, the petitioner must show a probability that no reasonable juror would have found the defendant guilty. *Id.* 513 U.S. at 329. Petitioner need not show that reasonable juror

could not have found him guilty, only a likelihood that a reasonable juror would not. *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001).

Here, all of the evidence relied upon by Petitioner was presented at trial, with the exception of the statements from the witness/victims. As his explanation of that omitted evidence, Petitioner states:

> In addition to the admissions of criminal conduct by the three juveniles found in the trial record, Petitioner intended to further impeach them, prove their bias, demonstrate precipitation of the incident by their admissions, and introduce into evidence more of their relevant statements freely given to Petitioner's Investigator, but was precluded by the trial court's evidentiary ruling."

(Amended Reply, #28 at 10.)

### a. No Likelihood of Success on "Restraint" -

Petitioner argues that he must be found "actually innocent" because the "restraint" element was not proven (#28 at 6-9). Petitioner notes that "Restrain" is defined by the Arizona statutes as restricting "a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person." Ariz.Rev.Stat. § 13-1301(2). Petitioner notes there was no evidence that he "moved" the victims. Indeed, he ordered them to stop where they were. (R.T. at 67.)

Petitioner also argues, however, that a "plain meaning of 'confine' requires some type of physical enclosure." (#28 at 8.) Because there was no evidence that he "confined" the victims in a physical enclosure, he must be found innocent. However, Petitioner reads too much into the terms. As recognized in *State v. Caudillo*, 124 Ariz. 410, 604 P.2d 1121 (1979), the "crux of the offense [of false imprisonment] is the infringement of personal liberty, not the particular means by which it is accomplished." Here, Petitioner undoubtedly infringed on the victims liberty by ordering them to stop and then ordering

them to the ground at gunpoint.[8] Petitioner cites to definitions of "confinement" in various editions of Black's Law Dictionary. Perhaps the most telling is the primary definition in the Third Edition, cited by Petitioner "[t]o deprive one of his liberty." The undersigned finds no likelihood that a reasonable factfinder would have entertained a reasonable doubt about the deprivation of these victims' liberty, nor that they were "confined" to that portion of the parking lot of the apartment complex upon which they found themselves kneeling. (R.T. at 67-68.)

### b. Legal Defense of "Overbreadth" Cannot Establish Innocence

Petitioner next argues that the "overbreadth" analysis under *New York v. Ferber*, 458 U.S. 747 (1982) renders the statute invalid, and he thus must be actually innocent. However, Petitioner confuses legal innocence with factual innocence. "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

### c. No Likelihood of Success on Exculpatory Evidence/Justifications -

Finally, Petitioner argues that the trial court excluded exculpatory evidence that showed Petitioner's "actual innocence" (#28 at 10-14) and that the state courts wrongly overlooked Petitioner's claim of legal authority to restrain the victims (#28 at 14-17).

The Petitioner does not challenge in any substantial aspect the prosecution's depiction of his actions in the commission of the offense. What Petitioner argues is that his display of a weapon to and detention of the victims was justified, either because the victims were threatening him, or because they had committed a felony.[9]

---

[8] The undersigned has not located any Arizona authority addressing this issue, perhaps because most comparable events would be prosecuted as an assault, kidnapping, etc.

[9] Petitioner does not reassert the claim made in the state courts that a breach of the peace justified his actions. Arizona law provides that "a private person may make an arrest for a misdemeanor when the person to be arrested <u>has committed</u> a misdemeanor amounting to a breach of the peace <u>in the presence</u> of the person making the arrest." *Gortarez By and Through Gortarez v. Smitty's Super Valu, Inc.*, 140 Ariz. 97, 102 680 P.2d 807, 812 (1984)

**No Likelihood of Self Defense** - Petitioner argues that his actions were justified as self defense in the face of a person armed with a knife. He offers the affidavit of his investigator to show that he was wrongly precluded from offering evidence that a victim "was openly carrying a large kitchen knife, and was approaching Mr. Kielsky before Mr. Kielsky reacted," that the victim "admitted that he had the large kitchen knife so that he could throw it at someone," and that upon questioning by the investigator the victims "expressed hostility and a desire for vengeance against Mr. Kielsky." (Amended Reply, #28, Exhibit 7 at ¶¶ 10, 13 and 11.) However, the investigator also relates that the victims had "used a large knife to attempt breaking into their own apartment the night in question after locking themselves out." (*Id.* at ¶ 9.)

In contrast, other evidence at trial reflected that the knife was a regular steak knife (R.T. at 19, 23, & 65), that the victim carried it down at this side (*id.* at 136), that the victims had the knife to play with it by throwing it in the grass between each other's feet[10] (*id.* at 24, 41, 77), that Petitioner's car was between him and the victims (*id.* at 39), that the victims were walking through the parking lot, past Petitioner, and not at him (*id.* at 38-39, 67, 86, 140, 141), and the victims did not brandish the knife at Petitioner (*id.* at 69-70). There was also testimony disputing the claim that the victims had broken into an apartment (*id.* at 63). Moreover, any hostility would have arisen after this encounter (if not as a result) because the victims had never met Petitioner previously (*id.* at 26, 81, 88).

Arizona applies an objective "reasonable person" standard in evaluating a justification based upon self defense. Ariz.Rev.Stat. § 13-405(2); *State v. Andersen*, 177 Ariz. 381, 868 P.2d 964 (Ariz.App. 1993). Based upon the foregoing, the undersigned does not find a likelihood that, even with the admission of the omitted evidence, a reasonable factfinder would have found that Petitioner was reasonably afraid for his own safety, and

---

(emphasis added).

[10] While not necessarily the safest of play, this is akin to the ancient childhood game known as "mumblety peg." *See* http://www.webster.com/cgi-bin/dictionary?va=mumblety-peg.

was thus justified in his actions.

**<u>Insufficient Evidence of Felony</u>** - Petitioner's Amended Reply also asserts that the evidence he proffers established that he was justified because the victims had committed a felony, namely burglary. (#28 at 14.) Arizona law provides that a "private person may make an arrest . . . [w]hen a felony has been in fact committed." Ariz.Rev.Stat. § 13-3884. Accordingly, to be justified in his actions, and hence innocent, Petitioner must show that a felony had been committed by the victims.

The only omitted evidence relevant to this defense was statements by a witness/victim that the victims had attempted to break into "their own apartment after locking themselves out." (#28, Exhibit 7 at ¶ 9.) However, at trial, the victims denied attempting to break into the apartment (R.T. at 63.)

Moreover, even the now offered testimony could have only shown an attempt to break into one's own home, hardly a felony offense. Petitioner argued on appeal to the Arizona Court of Appeals that the purported entry was a burglary because the victims had taken their parents' beer. (#12, Exhibit 2 at 15-16.) Petitioner acknowledged that burglary required that the perpetrator first "enter or remain unlawfully" on the premises. He argued, however, that the lawful presence in the apartment became unlawful when the victims proceeded to take the beer. (*Id.*) This presumes, however, that the parents had not authorized the taking of the beer, and that the permission to remain in the home was conditioned upon not taking drinking the beer. Petitioner presents no evidence to establish such facts, and neither fact is something which, in the experience of the undersigned, a reasonable factfinder would presume.

While perhaps the undersigned could conclude that Petitioner has established by a preponderance of the evidence that he subjectively believed the victims were engaged in some sort of foul play, that subjective belief would not be adequate to avoid conviction under Ariz.Rev.Stat. § 13-3884.

Moreover, under Arizona law, a "person is justified in threatening or using physical

force against another if in making or assisting in making an arrest . . . such person uses or threatens to use physical force." Ariz.Rev.Stat. § 13-409. Here, there was not sufficient evidence to create a likelihood that a reasonable factfinder would conclude that the victims threatened to or did use any physical force against Petitioner.

Based upon the foregoing, the undersigned finds no likelihood that, even with the omitted evidence, the factfinder would have found Petitioner not guilty. Accordingly, Petitioner has failed to establish his "actual innocence," and thus is not relieved of the burden of his procedural default.

### 3. Applicable Arizona Procedural Bars Independent and Adequate

In his Amended Reply (#28), Petitioner asserts that he cannot be found to have procedurally defaulted because the rules relied upon are not "independent and adequate." Federal habeas review of a defaulted federal claim is only precluded if the state court has disposed of the claim on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris*, 109 S.Ct. at 1042-43. Petitioner argues that Ariz.R.Crim.P. 32.2 and 32.4, and the rules authorizing the Arizona Supreme Court to deny jurisdiction in a special action are not "independent" and "adequate." (#28 at 4-6.)

Although Ariz.R.Crim.P. 32.2 has been found to not be "independent," *see Smith v. Stewart*, 241 F.3d 1191 (9th Cir. 2001), that rule is not relied upon by the undersigned to make a finding that Petitioner has procedurally defaulted. Similarly, the ability of the Arizona courts to deny discretionary jurisdiction has not been relied upon by the undersigned as a procedural bar establishing procedural default. To be sure, the Arizona Supreme Court did exercise this discretion in denying jurisdiction over Petitioner's special action. That denial of jurisdiction is not, however, what bars Petitioner from seeking review by the state court of his claim against the Arizona Court of Appeals. Rather, it is his delay beyond the applicable statute of limitations, Ariz.Rev.Stat. § 12-821.

On the other hand, the undersigned does rely upon Ariz.R.Crim.P. 32.4 to find a procedural default. Petitioner parrots the concern expressed by the undersigned in the Order (#23) directing a reply on procedural default that the exceptions to Ariz.R.Crim.P. 32.4 may preclude a finding of independence. The only exception raising that concern is found in Ariz.R.Crim.P. 32.2(g), and permits delayed post-conviction relief petitions where there has been a "significant change in the law." However, Petitioner does not, and has never, asserted that there has been a change in the law which would mandate a different outcome in his case. The potential that application of Ariz.R.Crim.P. 32.2(g) might render Rule 32.4 dependent upon federal law in some other cases does not make it dependent in this case. Based upon the claims made by Petitioner herein, the Arizona Courts could apply Rule 32.4 without reference to federal law. Accordingly, this procedural bar is "independent."

## C. CONCLUSIONS

The undersigned finds that Petitioner failed to fairly present his federal claims in the available state forums, and that he is now procedurally barred from doing so. Further, the Petitioner asserts no "cause and prejudice" to excuse his procedural default, and the undersigned finds that Petitioner has failed to meet his burden to show his "actual innocence." Thus, Petitioner is precluded, as a result of his procedural default, from now asserting his claim as grounds for federal habeas relief. *Buffalo v. Sunn*, 854 F.2d at 1163.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's First Amended Petition for Writ of Habeas Corpus, filed August 29, 2000 (#3) be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth

1 | Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72, Federal Rules of Civil Procedure*, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED: December 10, 2001

JAY R. IRWIN
United States Magistrate Judge